Evanna COPPOLA, Appellee,

v.

Robert FULTON, Director of Human Services; Commission for Human Services; Oklahoma Department of Human Services, Appellants.

No. 70922.

Supreme Court of Oklahoma.

Feb. 26, 1991.

Rehearing Denied May 7, 1991.

Charles Lee Waters, Gen. Counsel, Howard J. Pallotta, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellants.

Paul F. Fernald, Oklahoma City, for appellee.

KAUGER, Justice.

A single issue of first impression is presented—whether unpaid medical expenses, not subtracted from a personal injury award, may be deducted from income to determine eligibility for Aid to Families with Dependent Children (AFDC). We find that under both 45 C.F.R. § 233.20(a)(3)(ii)(F) [1] and DHS Manual

---

**1.** 45 C.F.R. § 233.20(a)(3)(ii)(F) (1986) provides in pertinent part:

§ 331.62,[2] to be deductible from income to determine eligibility for AFDC benefits, medical bills must be designated for payment from the personal injury award and actually be paid from its proceeds.

## FACTS

In 1985, the appellee, Evanna Coppola (Coppola/applicant), was injured in an automobile accident. On December 16, 1986, Coppola filed an application for AFDC benefits with the appellee, Oklahoma Department of Human Services (Department of Human Services).[3] Because of the accident and other illness, Coppola was without income from October 16, 1986, to the time of her application. When Coppola applied for AFDC benefits, she told the case worker that she would be receiving a settlement of her personal injury claim arising from the 1985 automobile accident. Because the receipt of the funds could affect eligibility for AFDC benefits, Coppola was advised to notify the Department of Human Services if she settled the claim. On December 21, 1986, Coppola withdrew her application for benefits. However, on January 1, 1987, Coppola wrote the Department of Human Services, and she requested that her application for benefits be reinstated.

On January 12, 1987, Coppola notified the Department of Human Services that she had received $1,600.00 in settlement of

"When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of a nonrecurring earned or unearned lump sum income (including for AFDC, title II and other retroactive monthly benefits, and payments in the nature of a windfall, e.g., inheritances or lottery winnings, *personal injury* and worker compensation *awards, to the extent it is not earmarked and used for the purpose for which it is paid,* i.e., monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc.), the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of receipt of the nonrecurring income or, at the State (sic) option, as late as the corresponding payment month ..." (Emphasis supplied.)

**2.** DHS Manual § 331.62 (Reissued 9/1/86, Revised 1/1/87) provides in pertinent part:
"... C. *Lump Sum Payments.* Monies received in a lump sum from any source are considered as income. Changing a resource from one form to another, such as converting personal property to cash, is not considered a lump sum payment.
1. *NonRecurring Lump Sum Payment.* A nonrecurring lump sum payment considered as income includes payments based on accumulation of income and payments which may be considered windfall in nature and may include but are not limited to VA or Social Security lump sum payments, inheritance, gifts, worker's compensation payments, etc. (Exception: Income tax refunds, see Manual 331.138.)

If a lump sum payment is received by a nonrecipient *prior to* date of application, any part remaining is considered as a resource.
These lump sum payments minus allowable deductions related to establishing the lump sum payment which are received by AFDC recipients or applicants prior to certification are considered as income. Allowable deductions are expenses earmarked in the settlement or award to be used for a specific purpose which may include, but are not limited to, attorney's fees, court costs, medical or funeral expenses, etc. For earned income received in a lump sum, work expense and $30 and $\frac{1}{3}$ disregard (if applicable) are allowed for each month that the earned income accumulated. The lump sum payment is added to all other monthly income considered on the case, including child support payments received in the State Office. When this total exceeds the basic requirements for the family size as shown on Appendix C–1, Schedule II, A or B, the family is ineligible for the number of months derived by dividing the total amount of income, including the lump sum payment, by the basic requirements.
The lump sum payment is considered whether depleted or not and no member of that family receiving assistance or applying for assistance is eligible for AFDC until the period of ineligibility has expired ..."
Section 331.62 was revised effective September 1, 1987. However, the quoted portion of the regulation remains substantially unchanged except to the extent that it has been renumbered and now appears as § 331.62(B)(1).

**3.** For convenience and clarity, the appellants will be referred to collectively as the "Department of Human Services" unless it is necessary to refer to a party in its individual capacity.

her personal injury action. She alleged that she was indebted in excess of the amount of the award. Coppola requested that her application for AFDC benefits remain under consideration. She indicated that the settlement would be applied to satisfy back mortgage payments and to repay loans for living expenses.

During a home visit on January 15, 1987, a case worker established that Coppola had actually received $1,615.00 of a $3,000.00 settlement. The balance of the settlement was applied to attorney's fees, costs, and to satisfy a statutorily imposed lien for medical services. Although Coppola had incurred other medical bills as a result of the 1985 accident, the bills were not deducted from her settlement amount. Coppola did not apply the proceeds which she received to satisfy the outstanding medical bills.[4] Instead, she used $750.00 to make back rental payments and $500.00 to repay a loan from her brother. The balance of the award was applied to her household bills.

On January 26, 1987, the Department of Human Services notified Coppola that her application for AFDC benefits had been denied. Coppola was informed that her income exceeded agency standards because of the receipt of the lump sum personal injury award. In denying the application, the Department of Human Services relied upon an agency regulation, DHS Manual § 331.62.[5] Section 331.62(C)(1), which mirrors the federal regulation,[6] defines the expenses which may be excluded from a lump-sum payment as those items which are *earmarked in the settlement or award to be used for a specific purpose, which may include, but are not limited to, attorney's fees, court costs, medical or funeral expenses, etc.* Coppola was deemed to have received $1,615.00 as a lump sum payment. The Department of Human Services recognized the attorney's fees, costs, and one medical bill actually deducted from her $3,000.00 award as allowable deductions pursuant to § 331.62(C)(1). It refused to deduct the medical bills Coppola allegedly incurred as a result of her accident which were not earmarked for payment in the settlement award and which remained unpaid.

Coppola requested an administrative hearing before the Appeals Committee to review the denial of benefits on January 27, 1987. At the request of Coppola's counsel, the hearing was continued to April 22, 1987. On June 19, 1987, the Appeals Committee issued its report upholding the denial of benefits. Coppola requested further review before the Director and/or the Commission of Human Services on July 14, 1987. On August 1, 1987, after reviewing the record, the appellant, Robert Fulton (Fulton/Director), found that the decision to deny the application for AFDC assistance was correct.

Coppola sought review in the district court pursuant to 56 O.S.Supp.1985 § 168(D).[7] After hearing argument and considering the briefs of the parties, the trial court entered a court minute finding the issues in favor of Coppola.[8] The Department of Human Services appealed pursuant to 75 O.S.1981 § 323.[9] The Court of Appeals affirmed finding that the denial of

---

4. The outstanding medical bills were in excess of $1,100.00. The record indicated that the receipt of the $1,615.00 caused Coppola to be ineligible for AFDC benefits for approximately 5 months.

5. DHS Manual § 331.62 (Reissued 9/1/86, Revised 1/1/87), see note 2, supra.

6. See discussion, infra.

7. Title 56 O.S.Supp.1985 § 168 provides in pertinent part:
   "... D. Any person aggrieved by any final decision of the Department may petition the district court in which the recipient resides for a judicial review of the decision pursuant to the provisions of Sections 318 through 323 of Title 75 of the Oklahoma Statutes. A copy of the petition shall be served by mail upon the General Counsel of the Department."

8. The trial court's decision is also found in the journal entry of judgment dated May 3, 1988, and filed on May 17, 1988.

9. Title 75 O.S.1981 § 323 provides:
   "An aggrieved party, or the agency, without any motion for a new trial, may secure a review of any final judgment of a district or

AFDC benefits was an arbitrary and capricious act. On September 20, 1990, we granted certiorari to address a question of first impression in Oklahoma—whether unpaid medical expenses, not subtracted from a personal injury award, may be deducted from income to determine eligibility for AFDC benefits. The parties were granted leave to file additional briefs on certiorari. The briefing cycle was completed on November 15, 1990.

UNDER BOTH 45 C.F.R. § 233.20(a)(3)(ii)(F) AND DHS MANUAL § 331.62, TO BE DEDUCTIBLE FROM INCOME TO DETERMINE ELIGIBILITY FOR AID TO FAMILIES WITH DEPENDENT CHILDREN (AFDC) BENEFITS, MEDICAL BILLS MUST BE DESIGNATED FOR PAYMENT FROM THE PERSONAL INJURY AWARD AND ACTUALLY BE PAID FROM ITS PROCEEDS.

■ The Department of Human Services asserts that pursuant to its regulations only those items earmarked and paid from a personal injury award are allowable deductions from income for the purpose of determining eligibility for AFDC benefits. Coppola does not contend that the lump-sum personal injury award should not be considered income for the purpose of determining her eligibility for AFDC benefits.[10] She does argue that by refusing to deduct outstanding unpaid medical bills from her personal injury award before calculating her eligibility, the Department of Human Services ignored its regulations and acted arbitrarily and capriciously.

The Aid to Families with Dependent Children program was created to protect the economic security of needy dependent children in America.[11] The AFDC program is a joint federal-state program in which participating states that provide assistance are partially reimbursed by the federal government.[12] States are not required to partic-

superior court under this act by appeal to the Supreme Court. Such appeal shall be taken in the manner and time provided by law for appeal to the Supreme Court from the district court in civil actions. An agency taking an appeal shall not be required to give bond."

**10.** The United States Supreme Court found in *Lukhard v. Reed,* 481 U.S. 368, 383, 107 S.Ct. 1807, 1816, 95 L.Ed.2d 328, 341 (1987) that Virginia's treatment of a personal injury award as income was consistent with the administrative and legislative history of the AFDC statutes. The Court also recognized that after the cause was filed, the Secretary of the United States Department of Health and Human Services promulgated a rule *requiring* the states to treat all lump-sum payment as income.

The receipt of a personal injury award is not ordinarily considered as income, expecially for the purpose of tax assessment. 26 U.S.C. § 104(a)(2) (1989). However, the awards are specifically defined as income in 45 C.F.R. § 233.20(a)(3)(ii)(F) (1986), see note 1, supra. 26 U.S.C. § 104(a)(2) (1989) provides:

"(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—
(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness ..."

**11.** *Heckler v. Turner,* 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138, 143 (1985); *Cannon v. Illinois Dept.,* 76 Ill.App.3d 910, 32 Ill.Dec. 502, 504, 395 N.E.2d 732, 734 (1979); Annot., "Supreme Court's Views as to Construction & Application of Aid to Families with Dependent Children (AFDC) Provisions of Social Security Act (42 USCS §§ 601–615)," 84 L.Ed.2d 917, 922 (1987); D. Dawson, "The Evolution of a Federal Family Law Policy Under Title IV–A of the Social Security Act—The Aid to Families with Dependent Children Program," 36 Cath.U.L.Rev. 197 (1986).

**12.** *Lukhard v. Reed,* see note 10 at 481 U.S. 372, 107 S.Ct. 1810, supra; *LaMadrid v. Hegstrom,* 830 F.2d 1524, 1526 (9th Cir.1987); W. Corbin, "The Development of the Social Security Act of 1935: Reflections Some Fifty Years Later," 68 Minn.L.Rev. 379, 395 (1983); Note, "1976 Developments in Welfare Law—Aid to Families with Dependent Children," 62 Cornell L.Rev. 1050 (1977). 42 U.S.C. § 601 (1983) provides in pertinent part:

"... The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for aid and services to needy families with children." The Oklahoma provisions governing AFDC benefits are found in 56 O.S.Supp.1988 § 231, et seq.

ipate in the plan.[13] The participating states are free to determine the appropriate standard of need and the level of assistance. However, they must administer their assistance plans in conformity with applicable federal regulations and statutes.[14] In 1981, Congress amended the AFDC statute to provide that a family receiving nonrecurring lump-sum income is ineligible for benefits for the number of months that the income would satisfy the family's standard of need.[15] The statute was passed because of concerns that AFDC recipients who acquired a large amount of income had an incentive to spend it as rapidly as possible. Previously, quick dissipation of the lump sum payment had allowed recipients to regain eligibility by reducing their resources to a level beneath the State's income limit.[16] By requiring that lump sum payments be considered income to the AFDC family, Congress apparently wanted to encourage the frugal use of these awards. They may also have hoped to save money for the government.[17]

In 1986, the Secretary of Health and Human Services (Secretary) promulgated 45 C.F.R. § 233.20(a)(3)(ii)(F) (1986) (federal regulation) requiring the States to treat all lump sum payments as income.[18] The regulation specifically includes a personal injury award as income *to the extent it is not earmarked and used for the purpose for which it is paid, e.g., monies for back medical bills resulting from accidents or injury.* Medical expenses are among those items which may be allowable deductions within the meaning of § 233.20(a)(3)(ii)(F). However, the Secretary's use of the terms "earmarked and used" makes it clear that only those deductible items, e.g., medical bills, funeral and burial costs, replacement or repair of resources, etc., which are properly treated in the settlement agreement will be excluded from income. TO BE DEDUCTIBLE UNDER THE FEDERAL REGULATION, MEDICAL BILLS MUST BE DESIGNATED FOR PAYMENT FROM THE PERSONAL INJURY AWARD AND ACTUALLY PAID FROM ITS PROCEEDS.[19]

The Director of Human Services is authorized to promulgate rules and regulations

13. *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118, 1125 (1968); Annot., "Supreme Court's Views as to Construction & Application of Aid to Families with Dependent Children (AFDC) Provisions of Social Security Act (42 USCS §§ 601–615)," see note 11 at 930, supra.

14. *Lukhard v. Reed*, see note 10 at 481 U.S. 372, 107 S.Ct. 1810; *Carleson v. Remillard*, 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352, 355 (1972); *Heckler v. Turner*, see note 11, supra; *Clark v. Commonwealth*, 118 Pa.Cmwlth. 587, 546 A.2d 1277, 1280 (1988). See also, F. Block, "Cooperative Federalism & The Role of Litigation in the Development of Federal AFDC Eligibility Policy," 1979 Wis.L.Rev. 1, 7.

15. *Gardebring v. Jenkins*, 485 U.S. 415, 417, 108 S.Ct. 1306, 1308, 99 L.Ed.2d 515, 520 (1988); 42 U.S.C. § 602(a)(17) (1983) provides in pertinent part:

"(a) A state plan for aid and services to needy families with children must—
(17) provide that if a child or relative applying for or receiving aid to families with dependent children, or any other person whose need the State considers when determining the income of a family, receives in any month an amount of earned or unearned income which, together with all other income for that

month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—
(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and
(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A) ..."

16. *Lukhard v. Reed*, see note 10 at 481 U.S. 372, 107 S.Ct. 1810; *Medberry v. Hegstrom*, 786 F.2d 1389, 1392 (9th Cir.1986).

17. *Medberry v. Hegstrom*, Id.

18. *Lukhard v. Reed*, see note 10 at 481 U.S. 379, 107 S.Ct. 1814, supra; 45 C.F.R. § 233.20(a)(3)(ii)(F) (1986), see note 1, supra.

19. AFDC regulations promulgated by the Secretary have the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977).

controlling the eligibility of applicants for assistance.[20] Those rules have the force and effect of law.[21] In order to conform with the federal law, by which it is bound,[22] the Department of Human Services promulgated DHS Manual § 331.62. Like the federal regulation, subsection (C)(1)[23] (state rule) treats lump sum payments as income and provides for certain deductions from the award. Allowable deductions include expenses *earmarked in the settlement or award to be used for a specific purpose.* Medical expenses come within the ambit of expenses which may be deducted from a lump sum award under § 331.62(C)(1).

■ Like the federal regulation which provides that the award must be used to satisfy financial obligations in order to qualify as a deduction, § 331.62(C)(1) provides that allowable expenses must be earmarked in the award to be used for a specific purpose. The state rule uses the same language as its federal counterpart and clearly requires that *allowable deductions be earmarked in the settlement or award for payment* in order to be excluded as income. If an administrative rule is clear and unambiguous, there is no need to resort to rules of construction to ascertain its meaning.[24] The clear language of DHS Manual § 331.62(C)(1) provides that in order to be deductible from a lump sum award, medical expenses must be earmarked in the settlement or award for payment. We find that medical expenses, not earmarked for payment in a personal injury award and not paid from proceeds of the settlement, may not be deducted from income to determine eligibility for AFDC benefits.

In reaching this result, we find the teaching of *Gardebring v. Jenkins,* 485 U.S. 415, 431–32, 108 S.Ct. 1306, 1315, 99 L.Ed.2d 515, 529 (1988) instructive.[25] In *Gardebring,* an AFDC recipient's husband

**20.** Title 56 O.S.Supp.1984 § 26.16 provides:

"The Director of Human Services, subject to the approval of the Oklahoma Commission for Human Services, is hereby authorized and directed to promulgate rules and regulations establishing policies with reference to eligibility of applicants for general assistance and emergency relief and the maximum sums that may be allocated to those persons having met the minimum requirements and declared as eligible for participation in accordance with the provisions of this act, subject to availability of funds. Provided that the minimum payment shall not be less than Ten Dollars ($10.00) and the maximum payment shall not be more than the standard for aid to families with dependent children."

Title 56 O.S.Supp.1990 § 237 provides in pertinent part:

"A. The Department of Human Services, hereinafter referred to as 'Department', as the single state agency designated to administer a statewide plan for child support, is authorized, in accordance with Title IV, Part D, of the Federal Social Security Act, as amended, 42 U.S.C., Section 651 et seq. to provide child support collection, parent location services and paternity determination services to enable it to participate in programs established by federal law.

B. The Department is authorized to:

... 2. Promulgate rules and regulations to provide child support services ..."

**21.** *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988); *Texas Okla. Ex-* *press v. Sorenson,* 652 P.2d 285, 287 (Okla.1982); *Rotramel v. Public Serv. Co.,* 546 P.2d 1015, 1017 (Okla.1975).

**22.** *Lukhard v. Reed,* see note 10 at 481 U.S. 372, 107 S.Ct. 1810, supra; *Carleson v. Remillard,* see note 14, supra; *Heckler v. Turner,* see note 11, supra; *Clark v. Commonwealth,* see note 14, supra. See also, F. Block, "Cooperative Federalism & The Role of Litigation in the Development of Federal AFDC Eligibility Policy," see note 14, supra.

**23.** DHS Manual § 331.62(C)(1) (Reissued 9/1/86, Revised 1/1/87), see note 2, supra. Although § 331.62(C)(1) does not specifically provide that personal injury awards are to be treated as income, Coppola does not argue that her award was not a lump sum payment within the meaning of the rule. She does assert that her unpaid medical bills should have been considered as deductions from her award.

**24.** *Mayfield v. H.B. Oil & Gas,* 745 P.2d 732, 735 (Okla.1987).

**25.** See also, *Jackson v. Guissinger,* 589 F.Supp. 1288, 1299 (W.D.La.1984) (An AFDC recipient may not, by taking out a loan and unilaterally earmarking the proceeds of a lump sum for repayment of that loan, deprive herself of the legal ability to make such sum available for support and maintenance.); *D'Ewart v. Neibauer,* 228 Mt. 335, 742 P.2d 1015, 1018 (1987) (Administrative rule providing that day care

received a retroactive lump sum Social Security disability payment of $5,752. The recipient used the sum to pay a $3,863.75 arrearage on the family's home mortgage, an overdue car repair bill of $1,366, and a legal fee of $150. The remaining balance was used to purchase children's clothing and to pay other household bills. The AFDC recipient in *Gardebring* reported the receipt of the disability benefits and their expenditure. She was informed that under the 1981 AFDC amendment, she and her family would be ineligible for benefits for the next several months. Because she had not been notified that receipt of a lump sum payment could affect her eligibility for AFDC benefits, the recipient opposed the discontinuance of benefits. The United States Supreme Court upheld the finding of ineligibility. It found that the distribution of brochures generally describing the AFDC program and advising AFDC recipients of their duty to report all household income monthly constituted adequate notice that benefits could be curtailed by the receipt of a lump sum payment. In so holding, the Supreme Court found that needy families should realize that the receipt of a large lump sum might affect their future eligibility for benefits, and that it would be prudent to inform their caseworkers of the development before spending the money. Because the recipient received AFDC benefits during the pendency of the cause, the Minnesota Department of Human Services was allowed to recoup the overpayment. Recoupment was allowed for benefits paid over a seven month period. The Supreme Court did not provide for a deduction in the recoupment amount represented by the bills actually paid from the lump sum payment.

Even if we were to find that actual notice was required, it would not change the result here. Coppola's case worker informed her that the receipt of a lump sum payment could affect her eligibility for AFDC benefits. Coppola did not expend any of the proceeds from her lump sum personal injury settlement to satisfy outstanding medical bills. Instead, she made payments strikingly similar to those made by the recipient in *Gardebring*—$750.00 for back rental payments, $500.00 to repay a loan from her brother, and the balance of the award for household bills. Although the recipient's actions are certainly understandable and perhaps quite reasonable, they simply do not qualify as deductions from a lump sum payment under the federal regulation or the state rule. These payments may not be deducted from her lump sum award to determine her eligibility for AFDC benefits. We note that Coppola could have been protected in her application for AFDC benefits to some extent had her outstanding medical bills been deducted from her lump sum personal injury award.

## CONCLUSION

Although application of the lump sum payment rule may culminate in a harsh result,[26] economic reality demonstrates that the source of funds for public assistance programs is finite. Pursuant to DHS Manual § 331.62(C)(1) only medical expenses earmarked for payment in a personal injury award or settlement may be deducted from a recipient's income to determine eligibility for AFDC benefits. The Department of Human Services followed the clear wording of § 331.62(C)(1) in refusing to deduct unpaid medical benefits from the recipient's personal injury award. Its actions were neither arbitrary nor capricious. To be deductible from income to determine eligibility for AFDC benefits under both 45 C.F.R. § 233.20(a)(3)(ii)(F) and DHS Manual § 331.62, medical bills must be designated

---

costs incurred but not paid in the budget month could not be deducted from claimant's income, for purposes of determining claimant's eligibility for benefits under the AFDC program.); *Zarko v. Director, Dept. of Social Serv.,* 144 Mich. App. 576, 375 N.W.2d 765, 767 (1985) (Automobile accident settlement received by claimant

was treated as income to her rendering her ineligible for receipt of AFDC benefits even though she transferred it to her parents.).

26.  *Gardebring v. Jenkins,* see note 15 at 485 U.S. 430–31, 108 S.Ct. 1314–15, supra.

for payment from the personal injury award and actually be paid from its proceeds.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT REVERSED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., and HODGES, V.C.J., dissent.